**Rudolph L. HEDGMAN, Jr., Petitioner,**

v.

**DISTRICT OF COLUMBIA HACKERS' LICENSE APPEAL BOARD, Respondent.**

**No. 86–1692.**

District of Columbia Court of Appeals.

Argued Oct. 22, 1987.
Decided Nov. 4, 1988.

Rudolph L. Hedgman, Jr., pro se.

Victor E. Long, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel, at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before MACK and FERREN, Associate Judges, and REILLY, Senior Judge.

REILLY, Senior Judge.

Petitioner challenges a decision by the Hackers' License Appeal Board ("Board") revoking his license to operate a cab for a period of six months because it found him in violation of certain taxicab regulations.[1] As the record discloses that the agency action did not conform to the requirements of the District of Columbia Administrative Procedure Act, D.C.Code §§ 1–1501–20 (1987), we reverse and remand.

The proceedings before the Board stemmed from a complaint filed by one Steven English, who had hailed a cab driv-

---

1. The Board found that petitioner's conduct violated 15 DCMR §§ 816.2 and 822.6 (1987), which provide:

816.2: The identification card issued to the driver of any taxicab licensed under § 31(e) of the License Act (§ 47-2929(e), D.C.Code, 1981 ed.) shall be displayed in a bracket or receptacle of a type approved by the Commission and on display in its Taxicab Bureau, and shall be located on the right half of the dash so as to be visible to any passenger in the vehicle.

822.6: The operation of taxicabs shall be conducted in accordance with the laws of the District and with due regard for the safety, comfort and convenience of passengers, for the safe and careful transportation of property, and for the safety of the general public. All reasonable efforts shall be made to promote safety at all times and under all conditions.

en by petitioner at the intersection of 22nd Street and Pennsylvania Avenue, N.W. shortly after 5 o'clock one summer afternoon, intending not to board the cab himself, but to have his small daughter driven home. What happened after the cab pulled to the curb is a matter of conflicting testimony, but the following sequence of events appears undisputed.

English placed the child in the back seat, then opened the front door on the passenger side and demanded to see the driver's identification which was not visible on the dashboard rack. The driver showed him his card. A verbal altercation ensued (the details of which are disputed) during which the little girl left the cab. English persisted in holding the front door open, however, to copy certain data from the identification card, until the driver got out, pushed him away, and an exchange of blows followed. Petitioner then drove away.

About two months later, petitioner was served with a notice to appear at a hearing and show cause as to why his public vehicle license should not be revoked for failure to comply with two different regulations, *viz.*, §§ 816.2 and 822.6, *supra* note 1. The notice then specified these charges as follows: "To wit: It is alleged that on June 30, 1986 at 5:15 p.m. ... you did fail to properly display a hacker's I.D. card and you verbally and physically assaulted a citizen."

Petitioner and English, the complainant, were the only witnesses at the hearing. After listening to their testimony and questioning them, the two members of the Board recessed and announced that they were taking away the hacker's identification card, but would authorize the issuance of a temporary (thirty day) license. Petitioner was also informed that at the end of that period, he would receive a written decision imposing a sanction against his privilege to operate a cab.

In its decision and order, now before us on review, the Board, under the caption "Findings of Fact," after stating the time and place of the incident and the fact the minor child entered the cab, found

3. That the complainant immediately asked to see the respondent's hacker's identification card and the respondent refused stating to the complainant "fuck you"; that the complainant directed his child out of the cab, and began to write down the cab company and number; that the respondent directed him to close the door, and the complainant refused until he wrote the cab number; that the respondent exited the cab, came to the complainant and pushed him, kicked him in the knee and hit him in the face causing him to stumble to the ground; that the complainant feared for himself and the safety of his child; that the complainant reported the incident to the police and was hospitalized.

4. That *the respondent admits to the aforementioned,* but that the complainant abused his character in front of his daughter by stating that he [the respondent] might molest his child; that the complainant refused to close the door after repeated requests by the respondent; that when the respondent exited his cab he thought his size would intimidate the complainant into closing the door so he pushed the complainant, the complainant hit the respondent, and the respondent hit him in the face.

(Emphasis supplied.)

In defending the Board's decision, counsel argued that it should be affirmed if supported by substantial evidence. This proposition of course is well established. *Jones v. District of Columbia Hackers' License Appeal Board,* 455 A.2d 896, 897 (D.C.1983). But in this instance, the crucial finding that petitioner admitted to the truth of what the Board found as facts from complainant's testimony, is without evidentiary support. Far from conceding that he had refused to show the identification card to complainant, he said that he did show it to him, but regarded the complainant's statement that he needed this information to protect the child from molestation from perverted cab drivers as so insulting that he told English that he should call another taxi, at which point the child left the cab. He also denied using any improper language in the child's presence.

In fact, his only concession was that the identification card was not displayed on the dashboard receptacle—a failure that he explained by testifying that he had removed it only hours before in order to make a report to a police station, and had neglected to replace it. He also testified that by blocking him from closing his front door, English was preventing him from going on to seek another fare, that since such action amounted to illegal seizure and was intentional, he proceeded to push him away, at which point English swung at him, and he punched back in self-defense.

■ The decision on its face shows that the Board made no attempt to resolve this conflicting testimony, despite the statutory mandate that an agency's findings of fact must "consist of a concise statement of the conclusions upon each contested issue of fact." D.C.Code § 1–1509(e) (1987). Findings which are merely summaries of the testimony presented are insufficient. *See First Baptist Church v. District of Columbia Board of Zoning Adjustment,* 432 A.2d 695, 700 (D.C.1981); *Committee for Washington's Riverfront Parks v. Thompson,* 451 A.2d 1177, 1193 (D.C.1982). Neither repetition of the statutory language nor a simple summary of the evidence satisfy the requirements of the Administrative Procedure Act. *Wheeler v. District of Columbia Board of Zoning Adjustment,* 395 A.2d 85, 88 (D.C.1978). Moreover, an agency's findings must be based on substantial evidence, and its conclusions of law must follow rationally from the findings. *See Perkins v. District of Columbia Department of Employment Services,* 482 A.2d 401, 402 (D.C.1984).

■ The Board's conclusory findings did not meet the latter test. We refer to the finding, repeated almost verbatim in the Board's "Conclusions of Law":

> 6. And that he did fail to display his hacker's identification card and that he did fail to operate his public vehicle with due regard for the safety, comfort and convenience of his passenger.

Assuming *arguendo* that a physical assault on a sidewalk while the cab was parked could constitute a failure "to operate a public vehicle with due regard for the safety ... of his passenger," might be a breach of the designated regulation, the Board points to no finding of fact on the issue of whether the driver or complainant was the aggressor in this physical encounter. Nor did it attempt to explain the bearing of this regulation on a fracas with a non-passenger.

■ When an administrative agency cloaks a paraphrase of the relevant regulation as a factual finding, as it did here, a reviewing court has no basis for determining whether the conclusions of law followed rationally from the findings of fact. *See Wheeler, supra,* 395 A.2d at 88. Thus, the challenged decision cannot be affirmed in the absence of findings and legal conclusions required by the Administrative Procedure Act.[2]

■ The Board also ignored another provision of the Administrative Procedure Act in holding that the "respondent misrepresented himself on the hacker's applications and motor vehicle operator's permit renewal application." At the hearing, petitioner, in response to a question from his own counsel, volunteered the information that he had had psychiatric treatment five or six years ago. After adjourning the hearing, the Board apparently examined all the applications filed by petitioner for license and, discovering that he had given a negative answer in such applications to questions concerning psychiatric observation or treatment, found him guilty of misrepresentation.

We note, however, that the show cause notice served prior to the hearing contained nothing to indicate that he was being charged with any irregularities in filling out application forms. Yet the act provides that "[i]n any contested case, all parties thereto shall be given reasonable notice of the afforded hearing.... The notice shall

---

2. Ordinarily, an administrative decision defective in these respects would be remanded to the agency for additional findings and conclusions. Such a remand here would be academic as the period of suspension had expired by the time the case reached us on the calendar.

state the time, place *and issues involved....*" D.C.Code § 1–1509(a) (1987) (emphasis supplied). A respondent is entitled to be fully aware of the scope of the charges in order to have an effective opportunity to be heard and to explain his conduct. *M.B.E., Inc. v. Minority Business Opportunity Commission of the District of Columbia,* 485 A.2d 152, 158 (D.C.1984) (quoting *Babazadeh v. District of Columbia Hackers' License Appeal Board,* 390 A.2d 1004, 1008 (D.C.1978)).

Apparently, this particular conclusion, improperly made, was a factor in the severity of the sanction imposed. *Cf. Pillis v. District of Columbia Hackers' License Appeal Board,* 366 A.2d 1094 (D.C.1976) (three months); *Proctor v. Hackers' Board,* 268 A.2d 267 (D.C.1970) (sixty days).

In view of the fact that it was petitioner's counsel, however, who drew the attention of the agency to his client's possible mental or emotional problems, we do not disturb that portion of the order which conditions restoration of his privilege to operate a public service vehicle upon "an interview with the Bureau of Motor Vehicle Service for a medical evaluation of his ability to operate." In all other respects, the decision and order is

REVERSED.