Nelson J. DAVIS, Plaintiff,

v.

ALALBAMA STATE UNIVERSITY, et al., Defendants.

Civ. A. No. 84–T–1090–N.

United States District Court, M.D. Alabama, N.D.

June 25, 1985.

Kenneth L. Thomas, Massey, Means & Thomas, Montgomery, Ala., for plaintiff.

Solomon S. Seay, Jr., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Nelson J. Davis has brought this lawsuit pursuant to 42 U.S.C.A. § 1983 against defendants Alabama State University, its president and its Board of Trustees, claiming that the university discharged him in violation of "procedural" due process guaranteed by the fourteenth amendment to the U.S. Constitution. Based on the evidence presented at a nonjury trial, the court finds that Davis's complaint has merit in part and that appropriate relief is warranted.

### I.

In 1979, Davis began working at Alabama State University as an academic advisor at the university's Academic Advisement Center. Since Davis's duties did not involve teaching, the university designated him a "nonacademic" employee with rights and responsibilities set forth in the Nonacademic Staff Handbook.

In early 1984, several university officials, including Davis's supervisor at the center, recommended that Davis be dismissed for alleged acts of insubordination occurring in January 1984. In response, the university initiated discharge proceedings against Davis pursuant to the Nonacademic Staff Handbook, which sets forth the procedures for dismissal. Employing these procedures, Davis requested and received a hearing before the Committee for Nonacademic Personnel, over which the university's personnel director presided. Throughout the

proceedings, Davis was represented by retained counsel.

Before the hearing, the university informed Davis of witnesses it expected to testify, and granted his request that witnesses be subpoenaed in his behalf. However, the personnel director informed counsel for both Davis and the university that the committee would consider testimony from only those witnesses who had knowledge regarding the alleged acts occurring in January 1984, and would not consider evidence of events prior to these acts.

The committee found Davis guilty of the alleged acts; however, it recommended that he not receive the maximum sanction, presumably dismissal, since it had considered "only a small portion of what seems to be a larger problem." According to the procedures, the committee's findings as to the offenses charged and nonbinding recommendation for sanction went to the university's president, defendant Leon Howard, for his decision.

Besides the committee's report, Howard received the recommendation from the personnel director that Davis be dismissed. Howard also considered information in Davis's personnel file, including reports of past allegations of insubordination by Davis. Howard dismissed Davis.

Davis appealed his dismissal to the Board of Trustees. While the president has the authority to dismiss employees, the handbook provides for appeal to the Board. The Board has neglected or refused to respond to Davis's appeal.

## II.

■ As recently reaffirmed by the U.S. Supreme Court, the due process clause of the fourteenth amendment guarantees persons with a property interest in their employment certain procedures before they may be dismissed. *Cleveland Board of Education v. Loudermill*, — U.S. —, —, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Here, all parties agree that Davis had a property interest in his employment guaranteeing such procedures. They differ, however, on whether Davis received all the procedures required by the due process clause.

Davis contends as follows: first, that he should have been allowed to present testimony from the witnesses subpoenaed for him for the hearing; second, that President Howard should not have considered information in Davis's personnel file or, if he did, that Davis should have had a chance to respond to such information; and third, that the Board of Trustees should have acted on his appeal. The court considers these contentions in turn.

## A.

■ The essence of due process is "notice and [an] opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–657, 94 L.Ed. 865 (1950). Here, Davis received notice of allegations of insubordination occurring in January 1984. Davis contends that he was nevertheless denied due process because he was prohibited from presenting testimony from the witnesses he had subpoenaed concerning his past performance. This evidence apparently was intended to address what sanction the university might impose on Davis, not whether he committed the acts alleged. As already stated, Davis was not allowed to present the evidence because the presiding officer limited the committee's consideration to evidence regarding the present allegations of insubordination.

■ "Ordinarily, the right to present evidence is basic to a fair hearing." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). Indeed, the right to present witnesses and documentary evidence is "[c]hief among the Due Process minima." *Ponte v. Real,* — U.S. —, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). However, this right is not unbridled, but is circumscribed by "the necessary discretion to keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2980. Furthermore, in nonjudi-

cial, administrative settings, broad discretion must be afforded.

■ Here, the personnel director, who presided over Davis's hearing, determined that the hearing committee's findings as to the charges and recommendation for punishment would be based solely on evidence from the period of the alleged acts of insubordination. Both Davis and the university were subject to this limitation. This court cannot say that this limitation was unreasonable and that the personnel director abused his broad discretion. Thus, the limitation did not violate Davis's right to procedural due process.

### B.

Davis's second contention is that Howard should not have considered information in Davis's personnel file in deciding to dismiss him, unless Howard gave Davis an opportunity to respond to such information. This contention has merit.

■ In *Cleveland Board of Education v. Loudermill,* the Court said that "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." —— U.S. at ——, 105 S.Ct. at 1495. This is so whether the issue is *if* discipline is appropriate or *what* discipline is appropriate. —— U.S. at ——, 105 S.Ct. at 1494. Here, the evidence reflects and the court finds that, in deciding to dismiss Davis, Howard considered information in Davis's personnel file relating to past allegations of insubordination. It is undisputed that Davis had no opportunity to respond to the information. Furthermore, he had no notice that Howard would consider it.

■ The past allegations of insubordination were, in part, what Davis had wanted the committee to consider, although it refused to do so. It is ironic that Howard then considered the allegations. It was also improper. While the committee could permissibly restrict the evidence, as it did, and Howard could then permissibly broaden it, once Howard did so, he had to notify

Davis and give him a chance to respond. Howard did not afford Davis due process simply by considering the past allegations. What Davis wanted was not just that Howard consider them but that Davis have "an opportunity to present his side of the story." —— U.S. at ——, 105 S.Ct. at 1495. Howard denied Davis this opportunity.

Howard testified at trial that he would have dismissed Davis even had he not considered information in his personnel file. Howard would thus appear to contend that any violation of due process was harmless. This is not so. The court has not found that Howard should not have considered the information in the personnel file. Although Howard could have chosen to rely only on the evidence presented at the hearing, once he decided to consider other evidence, he had to notify Davis and allow him to respond.

Indeed, Davis's employment record appears most relevant to what sanction Davis might receive. Such evidence would put Davis's acts of January 1984 in the context of, among other things, his overall job performance and his relations with fellow employees and other supervisors. As of yet, university officials have not had an opportunity to consider Davis's sanction in light of such factors, as presented from all perspectives. Davis is entitled to appropriate relief in light of this violation of his right to procedural due process.

### C.

Davis's third contention is that the Board of Trustees should have acted on his appeal. Thus, the question for the court is whether the Board's failure to act on Davis's appeal violated the procedures guaranteed by the due process clause. Davis does not contend that such an appeal is constitutionally required under any circumstances, nor would such a contention appear tenable. Rather, he contends that appeal to the Board is constitutionally required here merely because the handbook provides for it.

■ Clearly, not all violations of state statutory or regulatory procedure "rise to the level of a constitutional deprivation." *Thompson v. Bass,* 616 F.2d 1259, 1266 (5th Cir.), *cert. denied sub nom. Thompson v. Turner,* 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980). "[W]hen a statute only provides that certain procedural guidelines be followed in arriving at a decision, then there is no creation of a substantive interest protected by the Constitution." *Jean v. Nelson,* 727 F.2d 957, 981 (11th Cir.1984), *citing Hewitt v. Helms,* 459 U.S. 460, 470, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). Thus, appeal to the Board is not required simply because the handbook provides it. Rather, it is required if it is part of "what process is due" by the Constitution. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972).

■ What Davis's third contention does is to mix "whether process is due" with "what process is due." The Supreme Court has emphatically rejected just this concoction. *Cleveland Board of Education v. Loudermill,* — U.S. at —, 105 S.Ct. at 1492–93. State law and other sources of protected interests do not determine the specific procedures required by the due process clause, but only whether such procedures are guaranteed. *Id.* The Constitution determines the specific procedures required, *id.,* and Davis concedes that the Constitution does not guarantee appeal to the Board. The denial of an appeal to the Board did not violate Davis's right to procedural due process.

■ The court notes that Davis does not allege and has not shown that the Board acted on other appeals while not acting on his. Such an allegation, whether phrased in due-process or equal-protection terms, would certainly have a different character from Davis's present contention. *See Zeigler v. Jackson,* 638 F.2d 776 (5th Cir.1981) (Unit B).

### III.

Davis seeks injunctive relief and damages, both compensatory and punitive.

■ In light of the violation found in Part II(B) of this opinion, the court will enter an injunction requiring that Davis's dismissal be reconsidered after affording him notice and an opportunity to respond, either in person or in writing, concerning all information considered in determining an appropriate sanction for him. However, whether Davis is entitled to reinstatement and more than nominal damages—that is compensatory damages, including backpay, and punitive damages—cannot be determined at this time. If, after reconsideration of Davis's dismissal, it should appear that his dismissal was justified, Davis's damages would be limited to those flowing from the procedural due process violation and not from his dismissal, *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), and Davis would not be entitled to reinstatement. *Wilson v. Taylor,* 658 F.2d 1021, 1033–35 (5th Cir.1981) (Unit B). However, if, after reconsideration of Davis's dismissal, it should appear that dismissal was not justified, Davis may then be entitled to reinstatement and more in damages.

### IV.

The defendants correctly observe that any relief afforded by the court must be circumscribed by the immunities they claim.

■ Defendants Alabama State University and its Board of Trustees argue that they are subject to neither injunctive relief nor damages because the eleventh amendment to the U.S. Constitution bars suit against them. The court agrees. Quite recently, the Eleventh Circuit Court of Appeals held that the eleventh amendment, which prohibits federal courts from entertaining suits against states and their agencies, barred suit against Alabama's Troy State University. *Harden v. Adams,* 760 F.2d 1158 (11th Cir.1985). Alabama State University is identical to Troy State University in all relevant respects. Accordingly, Alabama State University and its Board of

Trustees are due to be dismissed.* *See Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Harden, supra.*

 However, President Howard is sued in both his individual and official capacities. Howard contends that he is immune in his official capacity from any award of compensatory damages, including backpay, and punitive damages. The court agrees. Any award of damages against Howard in his official capacity would in substance have to come from the State of Alabama, and as such is barred by the eleventh amendment. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Harden, supra.*

Howard also maintains that he is entitled to "qualified immunity" from any damages against him in his individual capacity. The Supreme Court has said that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Here, the court has found that Howard violated Davis's constitutional right to due process by considering information against Davis without giving him notice and an opportunity to respond. The issue is whether this right was clearly established when Howard dismissed Davis.

In *Cleveland Board of Education v. Loudermill*, the Court said that the rule requiring "some kind of hearing" before dismissal "has been settled for some time now." —— U.S. at ——, 105 S.Ct. at 1493. The effect of Howard's consideration of information without affording Davis notice and an opportunity to respond was to deny Davis any hearing whatsoever regarding his dismissal. It is beside the point that Davis had had a hearing before the committee, since this hearing focused on specif-

ic factual allegations and did not concern whether Davis should be dismissed. Howard considered and resolved Davis's dismissal apart from the committee and without Davis's participation. Howard reasonably should have known that this denied Davis due process. Thus, Howard is not entitled to qualified immunity.

Therefore, any injunctive relief will be against Howard in both his official and individual capacities, but any damages will be against Howard in his individual capacity only.

An appropriate judgment will be entered.

---

* Davis has not sued the board members separately, either in their individual or official capacities. Rather, he has used the board as an entity, which as such is but a part of the university and like the university is due to be dismissed under the eleventh amendment.